# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS
# LITTLE ROCK DIVISION

TOMMIE WATSON                                                                      PLAINTIFF

V.                                NO. 4:04CV00339-JTR

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration                                              DEFENDANT

## MEMORANDUM AND OPINION

Plaintiff, Tommie Watson, has appealed the final decision of the Commissioner denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). [1] Both parties have submitted Appeal Briefs (docket entries #7 and #8), and the issues are now joined and ready for disposition.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996), "substantial evidence on the record as a whole" requires a court to make a more scrutinizing analysis:

---

[1] It is well settled that a claimant has the burden of proving her disability by establishing a physical or mental impairment lasting at least twelve months that prevents her from engaging in any substantial gainful activity. *Ingram v. Chater,* 107 F.3d 598, 601 (8th Cir. 1997). The Social Security Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).

Plaintiff protectively filed her Applications for DIB and SSI on April 15, 2002 (Tr. 37-39, 165-167). Although Plaintiff alleged in her applications that she has been unable to work since November 28, 1998 (Tr. 37), the record indicates that she continued to work after that date.[2] In her Disability Report (Tr. 50, 75), Plaintiff alleges that she is disabled due to fallen arches, arthritis, anxiety, depression, hypertension, sleep apnea, degenerative joint disease of the spine and knees, GERD, headaches, and obesity.

After Plaintiff's applications were denied initially and on reconsideration (Tr. 168-170, 174-176), she requested an administrative hearing. (Tr. 25.) On November 3, 2003, the requested hearing took place before an Administrative Law Judge ("ALJ"). (Tr. 182-214.) Plaintiff was 50 years old at the time of the hearing, with a tenth grade education (Tr. 55, 69, 184). In her Work History Report, Plaintiff listed past relevant work as an assembly line worker, school crossing guard,

---

[2]For example, during the November 3, 2003 administrative hearing, Plaintiff testified that, since November of 2002, she had been working at Pathfinder, but had taken six weeks off in the summer of 2003. At Pathfinder, she drove disabled adults to work and drove infants up to the age of three to daycare. She was able to work 6-7 hours a day, five days a week (Tr. 187-191).

In 2001, Plaintiff testified that she was employed for 3-4 months on an assembly line at Maybelline, working 3 to 5 days a week (Tr. 191-192). Plaintiff also worked part-time as a lunch monitor and crossing guard at North Rocks Special School in 2000 and 2001 (Tr. 193-194, 47-48).

Finally, in 1998 and 1999, Plaintiff worked for Carelink where she assisted the elderly in making breakfast, making beds, washing them, combing their hair, grocery shopping, and picking up their medications (Tr. 193, 47).

care giver for the elderly, and a food server. (Tr. 58.) During the hearing, Plaintiff testified that she also had worked at Dillards. (Tr. 194-195.)

The ALJ considered Plaintiff's impairments by way of the familiar five step sequential evaluation process. The first step involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(b). If the claimant is, benefits are denied; if not, the evaluation goes to the next step.

Step 2 involves a determination, based solely on the medical evidence, of whether the claimant has a severe impairment or combination of impairments. *Id.,* § 404.1520(c); *see* 20 C.F.R. § 404.1526. If not, benefits are denied; if so, the evaluation proceeds to the next step.

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id.*, § 404.1520(d). If so, benefits are awarded; if not, the evaluation continues.

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform past work. *Id.,* § 404.1520(e).[3] If so, benefits are denied; if not, the evaluation continues.

Step 5 involves a determination of whether the claimant is able to perform other substantial and gainful work within the economy, given claimant's age, education and work experience. *Id.*, § 404.1520(f). If so, benefits are denied; if not, benefits are awarded.

---

[3] In regulations that became effective September 25, 2003, the Social Security Administration amended and clarified certain aspects of the sequential evaluation process in ways not material to this opinion. 20 C.F.R. § 404.1520(e) and (f) were redesignated 20 C.F.R. § 404.1520(f) and (g), respectively. 68 Fed. Reg. 51153, 51161-62 (August 26, 2003).

In his decision, dated December 30, 2003, the ALJ found that Plaintiff: (1) met the disability insured status requirements of the Act since November 28, 1998, the date of her alleged onset of disability (Tr. 15); (2) had not engaged in substantial gainful activity since November 28, 1998;[4] (3) had severe impairments, including hypertension, obesity, obstructive sleep apnea, anemia, flat feet, and arthralgia, as established by the medical evidence, but none of those impairments, alone or in combination, met or equaled Listings (*id*.); (4) had objectively identifiable, medically determinable impairments that reasonably could be expected to produce the pain and other subjective symptoms, but her allegations concerning her level of pain, subjective complaints, and functional limitations were not entirely credible or reasonably supported by the findings of the objective medical evidence (Tr. 17); (5) retained the residual functional capacity ("RFC") to perform a full range of light work[5] (Tr. 20); and (6) could perform her past relevant work as a clothes tagger and assembly line worker, since both of those jobs were classified as light work. (*Id.*). Thus, the ALJ concluded that Plaintiff was not disabled.

On March 17, 2004, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision (Tr. 5-7), making it the final decision of the Commissioner. On April 5, 2004, Plaintiff filed her Complaint (docket entry #2) initiating this appeal.

In Plaintiff's Appeal Brief (docket entry #7), she contends that the ALJ erred: (1) in failing to make a determination that she could perform the specific tasks of her past relevant work (*Pltf.'s*

---

[4]In reaching this finding, the ALJ concluded that the work Plaintiff performed after November 28, 1998, did not rise to the level of gainful employment and was performed under sheltered conditions. (Tr. 15.)

[5] Light work involves the lifting of no more than 20 pounds at a time with the frequent lifting of up to 10 pounds, and standing and walking, off and on, for a total of 6 hours out of an 8-hour workday. 20 C.F.R. § § 404.1567(b) and 416. 967(b), and Social Security Ruling 83-10.

*App. Br.* at 11); (2) in failing to recognize and analyze her significant mental limitations which prevented her from performing her past relevant work (*Pltf.'s App. Br.* at 11-12); (3) in failing to consider her impairments in combination (*Pltf.'s App. Br.* at 12); and (4) in analyzing her credibility (*Pltf.'s App. Br.* at 12).[6] The Court will analyze each of these arguments separately.

First, Plaintiff argues that the ALJ made no determination of whether she could perform the specific tasks of her past relevant work. (*Pltf.'s App. Br.* at 11.) However, in advancing this argument, Plaintiff fails to explain how her past relevant work as a clothes tagger and assembly line worker was inconsistent with her RFC to perform a full range of light work. In her Work History Report, Plaintiff indicated that, as an assembly line worker, she sat down for 8 hours each day and lifted no weight. (Tr. 59.) During the administrative hearing, she testified that, on the assembly line: (a) she worked in a sitting position all day, except "you had to stand up for a little while"; (b) she lifted very little weight; and (c) the only thing "physical" about the job was "standing up." (Tr. 192.)

Plaintiff testified that her job as a clothes tagger at Dillards involved her putting price tags on clothes. She stood while doing this job, but it did not involve any lifting. (Tr. 194.) Plaintiff stated that she "really liked that job" and "did try to keep it" but was later fired because she did not have any transportation, which caused her to be late too many times. (Tr. 194-195.) Thus, based on Plaintiff's own testimony, her past relevant work as assembly worker and clothes tagger are jobs that could be performed by someone with an RFC for a full range of light work. Under these circumstances, there was no reason for the ALJ to analyze whether Plaintiff could perform the

---

[6]Plaintiff's counsel set forth these alleged errors in a rambling and conclusory fashion. (*Pltf.'s App. Br.* at 11-12.) He then set forth eight pages of boilerplate law governing the 5-step sequential evaluation process (*Pltf.'s App. Br.* at 12-19) that had no relevance to the specifics of Plaintiff's case or the ALJ's alleged errors. As a result, Plaintiff's Appeal Brief was of little assistance to the Court.

specific tasks of her past relevant work.

Second, Plaintiff argues that the ALJ erred in not recognizing and analyzing her allegedly significant mental limitations, which prevented her from performing her past relevant work. However, to support this argument, Plaintiff cites only the opinion of Dan Donahue, Ph.D., a non-examining psychologist who formed his opinion based solely on a review of the medical records in Plaintiff's file. (Tr. 147-164.) According to Dr. Donahue, Plaintiff: (a) was "moderately limited" in her ability to maintain concentration, in social functioning, and ability to complete a normal workday and work week without interruption from psychologically based symptoms; and (b) could perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 147-149, 161.) Thus, Dr. Donahue concluded that: "The claimant is able to perform work where interpersonal contact is routine but superficial, e.g. grocery checker; complexity of tasks is learned by experience, several variables, uses judgment with limits; supervision required is little for routine by detailed for non-routine." (Tr. 149).

While an ALJ should consider the opinion of an agency expert, such as Dr. Donahue, the opinion of a non-examining source generally is not deemed to constitute substantial evidence. *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). This is especially true when, as here, there is other evidence from examining sources, which conflicts with Dr. Donahue's opinion. *See Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000).

Two consultative examiners, Bradley Diner, M.D., and Wightman Harris, a licensed psychological examiner, performed mental assessments of Plaintiff. On August 28, 2002, Dr. Diner performed a one-time consultative psychiatric evaluation and, at Axis I, diagnosed "panic disorder with agoraphobia." (Tr. 117-121.) The ALJ discounted Dr. Diner's Axis I diagnosis because it was

internally inconsistent and not supported by the record as a whole (Tr. 19). For example, Dr. Diner noted that Plaintiff drove herself to the examination (Tr. 117), reported no difficulty with social relationships, denied any aggression, and stated: "I try very hard to get along with everyone." (Tr. 120.) In addition, Dr. Diner's diagnosis appears to be based on subjective complaints, such as her statements that: she felt like she was being crowded or rushed and had frequent panic attacks (Tr.117); once or twice a week, she heard cursing or voices in her head (Tr. 118); she had difficulty with disorientation during and after panic attacks, however, she reported no problems with long-term or short-term memory. (Tr. 119.) Importantly, in contrast with Dr. Donahue, it was Dr. Diner's opinion that Plaintiff demonstrated adequate concentration, persistence, and pace, and that her condition was expected to improve (Tr. 120).

On October 2, 2002, psychological examiner Harris evaluated Plaintiff and prepared a Psychological Screening Report. (Tr. 124-126.) Plaintiff reported to Mr. Harris that she was no longer taking Zoloft or Prozac due to their side effects. Despite this lack of antidepressant medication, Mr. Harris noted that, during his interview, Plaintiff "did not endorse symptoms of depression to the extent that her mental status would effect her job performance." (Tr. 124.) In his Conclusions and Recommendation, he stated that Plaintiff "appears to be stable emotionally based upon her responses to a structured interview and behavioral observations within the testing situation." (Tr. 126.) Mr. Harris also opined that Plaintiff "may be reasonably expected to sustain functioning by means of semiskilled employment." (*Id.*)

In conclusion, the ALJ properly considered and evaluated the opinions of Dr. Donahue, Dr. Diner, and Mr. Harris, but, after considering the entire record, concluded that the objective medical evidence did not support a finding of a "severe" mental impairment. (Tr. 15.) Contrary to

Plaintiff's argument, substantial evidence supports the ALJ's determination that Plaintiff possessed the RFC to perform a full range of light work, with no mental limitations.

Third, Plaintiff makes a conclusory and entirely unsupported argument that the ALJ did not consider her impairments in combination. (*Pltf.'s App. Br.* at 12.) However, a review of the ALJ's decision reveals that, in deciding if her impairments were "severe" and if they met a listing, he did consider those impairments in combination. (Tr. 15.) Thus, the Court concludes that this argument is without merit.

Finally, Plaintiff contends that the ALJ erred in failing to properly evaluate her credibility. (*Pltf.'s App. Br.* at 12.) To the contrary, the ALJ carefully evaluated Plaintiff's subjective complaints (Tr. 17-19) in accordance with the Court's holding in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). In *Polaski*, the Court identified the following factors that an ALJ should consider in assessing the credibility of a claimant's subjective complaints: daily activities; the duration, frequency, and intensity of pain, dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; and functional restrictions. *Id.* at 1322.

The ALJ considered and properly discounted Plaintiff's complaints of pain[7] (Tr. 18); considered her activities of daily living, including the many work-related activities she was able to perform during the relevant time period; and considered her medications, including over-the-counter Mylanta, Pepcid, and Alka-seltzer, and the fact she had stopped taking Prozac and Zoloft, because they caused her headaches. (*Id.*) Notably, Plaintiff does not take prescription pain medication,

---

[7]While Plaintiff complained of disabling foot pain, she only saw her podiatrist twice and cancelled three appointments. (Tr. 123.) Lack of treatment is an appropriate factor which an ALJ can rely on to discount a claimant's complaints of disabling pain. *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001). Finally, Plaintiff later received shoe inserts and reported to her treating physician that the inserts made her "feel better." (Tr. 102.)

another factor which tends to undermine her allegations of disabling pain. *See Wilson v. Chater*, 76 F.3d 238, 241 (8th Cir. 1996). Thus, the Court concludes that the ALJ properly analyzed Plaintiff's credibility in accordance with the factors cited by the Court in *Polaski*.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole that supports the decision of the ALJ. *E.g.*, *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992). The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993).

IT IS THEREFORE ORDERED that the final decision of the Commissioner is affirmed and Plaintiff's Complaint is DISMISSED, WITH PREJUDICE.

DATED this 21st day of July, 2005.

_____
UNITED STATES MAGISTRATE JUDGE